# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# GREENBELT DIVISION

| | | |
|---|---|---|
| **FRENCHIE JOHNSON** | * | |
| **7902 CAROL COURT** | | |
| **CLINTON, MD 20735** | * | |
| | | |
| *Plaintiff,* | * | Case No. 21-799 |
| | | |
| v. | * | |
| | | |
| **FEDCHOICE CREDIT UNION** | | |
| **SERVICE ORGANIZATION, LLC** | * | |
| **10001 WILLOWDALE ROAD** | | |
| **LANHAM, MD 20706** | | |
| | * | |
| Serve on: | * | |
| David E. Bunch | * | |
| 10001 Willowdale Road | | |
| Lanham, MD 20706 | * | |
| | | |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC.** | | |
| **505 CITY PARKWAY WEST** | * | |
| **ORANGE, CA 92668** | | |
| | * | |
| Serve on: | | |
| Experian Information | * | |
| Solutions, Inc. c/o | | |
| The Corporation Trust, | * | |
| Incorporated | | |
| 2405 York Road | * | |
| Suite 201 | | |
| Lutherville Timonium, MD | * | |
| 21093 | | |
| | | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Frenchie Johnson, (hereafter the "Plaintiff") by counsel, for his complaint against the Defendants, alleges as follows:

1

## PRELIMINARY STATEMENT

1. With the digitization of our world Americans have witnessed a revolutionary increase in the accumulation and processing of data of their personal and financial information. The data revolution has become an integral part of our lives and has benefited us all in countless ways.

2. As we enjoy the benefits of these technological advances, custodians of this data must remain mindful of the substantial economic and emotional harm that often results when this information is mishandled or misused. Examples of such mishandling include when inaccurate information is disseminated and/or obtained about an American consumer.

3. Companies commonly known as consumer reporting agencies ("CRAs") have benefited immensely from these advances in the area of data technology allowing them to accumulate and sell American consumers credit histories and personal information.

4. These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly known as "consumer reports." Concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6. Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8. To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing to their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9. This action seeks, compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Jeffrey Bartz against FEDCHOICE Federal Credit Union and Experian Information Services, LLC for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts additional claims against FEDCHOICE Federal Credit Union under common law.

## JURISDICTION

10. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. § 1367.

## PARTIES

11. The Plaintiff is a natural person and resident of the State of Maryland. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. FedChoice Credit Union Service Organization, LLC (hereafter "FedChoice") is a non-profit, cooperative association organized under the Federal Credit Union Act, 12 U.S.C. § 1452 *et seq. United States v. Michigan, 851 F.2d 803, 804 (6th Cir.1988).* and has a national headquarters in Maryland.

13. Experian Information Solutions, Inc. (hereafter "Experian") is a private limited company formed under the laws of the State of Ohio and is authorized to do business in the State of Maryland.

14. Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

15. Experian disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

16. Credit-reporting agencies collect information from furnishers like FedChoice, other creditors, governmental entities, collection agencies and third-party intermediaries. They generally collect data every month, and they typically update their credit records within one to seven days after receiving new information. To facilitate the collection process and to reduce reporting costs, the CRAs have implemented procedures to have data submitted in a standard format, the so-called Metro format. Data may be submitted through various media, including CD-ROM and electronic data transfer. Furnishers like FedChoice submit information voluntarily. No state or federal law requires them to report data to the CRAs or to use a particular format for their reporting. As a result, the completeness and frequency of reporting by furnishers can vary.

17. A credit score is a number that summarizes credit risk, based on a snapshot of a consumer's credit report at a particular point in time. Credit bureau-based scores have been

available since 1989 when Fair Isaac and Company, installed its first "FICO" score at Equifax. Credit scores summarize the information on a consumer's credit report. The score is designed to be predictive of credit risk and is used by lenders and insurance companies. FICO scores, which are the industry standard, are calculated from different credit data variable groups.

18. Every day thousands of consumer disputes are received and processed by the National CRAs: Experian, Trans Union and Experian. These disputes are received via phone, mail or online through the Internet. Each credit-reporting agency is obligated by the FCRA to conduct a reasonable investigation of the disputed item(s).

19. The bureaus and the data furnishers are obligated under the FCRA to ensure that they have reasonable procedures in place to ensure maximum possible accuracy of the credit file data.

20. When a consumer contacts the credit bureaus, the bureau will typically send an Automated Consumer Dispute Verification form (hereafter "ACDV") electronically through a system called e-Oscar, to the data furnisher for verification of the item in question.

21. The e-Oscar system was developed by Experian, Experian, Innovis and Trans Union and purports to be an "Online Solution for Complete and Accurate Reporting."

22. Upon receiving the ACDV through e-Oscar, the furnisher is required to conduct its own investigation and send a response back to the CRAs. The dispute can be verified as reported, changed/updated or deleted.

23. The results of the investigation are then updated on the credit report by the CRAs and either mailed or emailed back to the consumer. This process can take up to 30-45 days to complete but it typically takes less than 30 days.

24. Either because of time, cost, or volume of disputes, the CRA's have adopted an investigation procedure that involves condensing a consumer's dispute to a 2 to 3-digit code that

is sent electronically to the data furnisher. Sometimes, the CRA's also provide images of the actual dispute letter sent by the consumer to the CRAs.

25. Unfortunately, the data furnisher almost always performs its investigation based only on this 2- or 3-digit code and quickly verifies its previous data to the CRA's without performing any real investigation. In fact, these investigations are often conducted in under three minutes by low level back-office employees who are often compensated based upon the number of disputes they can process per day.

26. The CRAs then rely solely on the results of the data furnisher's investigation without performing any independent investigation.

27. This investigation method is known as "parroting" and no independent analysis, evaluation or reasonable investigation is ever performed by the CRAs.

28. FedChoice is a "furnisher" and regularly furnish information about consumers, including the Plaintiff, to Experian.

29. Within two years prior to the filing of this lawsuit, Plaintiff repeatedly requested and received copies of the credit file of the Plaintiff compiled and maintained by Experian.

30. Each credit report received by the Plaintiff contained errors and each CRA furnished Plaintiff's credit reports to 3rd party credit granting entities after receiving her disputes.

## BALANCE DUE INACCURACY

31. The inaccuracy reported by Experian were furnished by FedChoice.

32. The inaccuracy furnished by FEDCHOICE and reported by Experian after July 2020 were that Plaintiff had a past due outstanding balance of $6,421.00. The information furnished by FedChoice was inaccurate and misleading because Plaintiff made a settlement payment and satisfied the debt on June 3, 2020. This payment was made to FedChoice directly.

33. Plaintiff disputed the inaccuracy at least twice.

34. Upon the Plaintiff's request for verification and correction of the Fedchoice inaccuracy, and in accordance with its standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially, or reasonably verify the FedChoice disputed inaccuracies.

35. Plaintiff alleged that Experian failed to actually contact FedChoice. Alternatively, it is also alleged that Experian did forward some notice of the disputes to FedChoice and FedChoice failed to conduct their own lawful investigations.

36. The FedChoice inaccuracies are damaging and derogatory items on the Plaintiff's Experian credit report.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681e(b) BY EXPERIAN

37. The Plaintiff realleges and incorporates paragraphs 1 through 36 above as if fully set out herein.

38. A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

39. Experian is a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

40. Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681n(a)(1)-(3).

41. Section 1681o of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. See 15 U.S.C. § 1681o. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. Id. at § 1681o(a)(1)-(2).

42. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." See 15 U.S.C. § 1681e(b).

43. When Experian receives a dispute from a consumer, their "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

44. Experian does no independent or further "investigation" of the substance of the consumer's dispute.

45. This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

46. Making matters worse, Experian has a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by them previously. In other words, upon receipt of a consumer's dispute, Experian's first step is to check whether the subject of the dispute has previously been "investigated," *i.e.*, whether a two-digit code has previously been sent to the furnisher of the information to check whether the data matches. If it has, Experian often refuses to do any sort of investigation into the consumer's dispute whatsoever.

47. A procedure aimed at the expeditious elimination of work for Experian instead of the accuracy of the underlying information is patently unreasonable or runs an unjustifiably high risk of violating the FCRA § 1681i.

48. Moreover, the FCRA envisions the investigation process to involve both the CRA *and* the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. § 1681i and § 1681s-2b, the consumer has a much greater level of protection ensuring that inaccurate information will be corrected as quickly as possible.

49. Because of the repeat dispute procedure Experian has in place, the consumer loses that dual-entity level of protection. Experian unilaterally determines that the furnisher of the disputed information will not even be contacted to conduct its own investigation.

50. While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher *must* receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

51. As described above, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

52. As a direct and proximate result of the failures of Experian, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

53. As a direct and proximate result of the failures of Experian, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

54. As a direct and proximate result of the willful and/or negligent refusal of Experian to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss

and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15. U.S.C. § 1681o.

55. The continued refusal of Experian to adopt and/or allow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

56. Experian violated 15 U.S.C § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i BY EXPERIAN

57. Plaintiff realleges and incorporates paragraphs 1 through 56 above as if fully set out herein.

58. The FCRA mandates that a CRA conduct an investigation of the accuracy of the information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id*.

59. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

60. The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681i(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." See 15 U.S.C. § 1681i(a)(3)(B).

61. Experian violated 15 U.S.C § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to the appropriate furnisher; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

62. Experian willfully and/negligently failed to conduct *any* investigation, let alone a reasonable investigation, of Plaintiff's disputes in violation of 15 U.S.C. § 1681i(a)(1).

63. Upon information and belief, at no point in their reviews of Plaintiff's disputes did Experian make a determination that the dispute was frivolous or irrelevant.

64. Experian certainly did not advise the Plaintiff that Plaintiff's disputes had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

65. As a direct and proximate result of the refusal to conduct a reasonable investigation by Experian, Plaintiff has suffered economic and noneconomic loss.

66. As a direct and proximate result of the disregard by Experian for Plaintiff's disputes and the importance of the Plaintiff's good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

67. As a direct and proximate result of the willful and/or negligent refusal by Experian to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

68. The continued refusal by Experian to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT III
## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY FEDCHOICE

69. Plaintiff realleges and incorporates paragraphs 1 through 68 above as if fully set out herein.

70. FedChoice violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the patently inaccurate FedChoice representation to Experian; by failing to fully and properly investigate the Plaintiff's dispute of the FedChoice representation described above; by failing to review all relevant information regarding the same; by failing to accurately respond to Experian; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the FedChoice representation to Experian.

71. As a direct and proximate result of this conduct, action and inaction of FedChoice, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of

time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial.

72. The conduct, action and inaction of FedChoice was willful, rendering FedChoice liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, FedChoice was at best negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

73. The Plaintiff is entitled to recover costs and attorneys' fees from FedChoice in an amount to be determined by the Court pursuant to 15. U.S.C. § 1681n and § 1681o.

## COUNT IV
## DEFAMATION BY FEDCHOICE

74. Plaintiff realleges and incorporates paragraphs 1 through 73 above as if fully set out herein.

75. As part of a financial transaction on or about June 3, 2020 FedChoice received a settlement payment that satisfied the account. FedChoice received the payment but did not credit Plaintiff's account and instead continued to report to Experian that a balance was owed.

76. Additionally, FedChoice was notified on multiple additional occasions that the information they were reporting to Experian was egregiously inaccurate. Plaintiff also notified FedChoice directly of the inaccuracies via phone and email.

77. Notwithstanding that it had actual knowledge of the inaccuracies, FedChoice falsely represented to Experian that the FedChoice representations of a balance due were true when they were in fact false and misleading.

78. Within one year of the filing of this Complaint, FedChoice published false and misleading information claim that Plaintiff had late payments occurring on an installment account after the balance owed to FedChoice had been settled and satisfied.

79. The defamation was willful and with malice. FedChoice had actual knowledge that the Plaintiff was no longer legally responsible to pay any amount for the account reported in the FedChoice representation because it accepted and logged the final payment.

80. FedChoice also had substantial evidence by which to have verified that the FedChoice representation about the installment account was not accurate. FedChoice willfully decided to ignore multiple documented consumer disputes made by the Plaintiff sent to FedChoice by Experian.

81. As a direct and proximate result of this conduct, action and inaction of FedChoice, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial.

82. The defamation, conduct and actions of FedChoice were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against FedChoice in an amount to be determined by the Court.

WHEREFORE, Plaintiff, Frenchie Johnson, respectfully prays for a judgment against Defendants as follows:

    a.    Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

    b.    Such amount of punitive damages as the Court may allow for violations of the FCRA;

    c.    The cost of the action together with reasonable attorneys' fees as determined by the Court;

    d.    Such other and further relief as may be just and proper.

## **JURY TRIAL DEMAND**

Frenchie Johnson hereby demands a jury trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, attorney's fees and litigation costs.

Dated: March 29, 2021  Respectfully Submitted,

*/s/ Kevin C. Williams*
Kevin C. Williams, Esq., No. 18072
Law Office of Kevin Williams, LLC
8403 Colesville Road, Suite 1100
Silver Spring, MD 20910
301.399.1700
kevin@kwesquire.com